UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | | |
|---|---|---|---|
| LAWANDE C. HAGGARD | ) | | |
| | ) | | |
| Petitioner, | ) | Case Nos. | 1:12-CR-76-HSM-CHS |
| | ) | | 1:13-CV-244-HSM-CHS |
| v. | ) | | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

**MEMORANDUM OPINION**

Petitioner Lawande C. Haggard, ("Petitioner"), pleaded guilty pursuant to a Plea Agreement to a federal drug crime and was sentenced on March 12, 2013 to 80 months' imprisonment. He subsequently filed a timely *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion") [Doc. 25].[1] The government responded [Doc. 29], and Petitioner replied [Doc. 41]. For the reasons that follow, the Court finds an evidentiary hearing on the 2255 Motion is not necessary, and the 2255 Motion shall be DENIED.

**I.     STANDARDS**

  A. Threshold Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence, if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief

---

[1] All citations to the district court record are to the docket of Case No. 1:12-cr-76, which is the underlying criminal case.

1

under § 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8 requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or

conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

B. <u>Standard for Ineffective Assistance of Counsel</u>

Petitioner raises several ineffective assistance of counsel issues. Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). That test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id*. (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court "has declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct

3

> falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Moreover, absent clear and convincing evidence to the contrary, a defendant is bound by his or her plea agreement and representations made under oath during a plea colloquy. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.") (internal punctuation and citations omitted). In *Blackledge v. Allison,* the Supreme Court explained the importance and weight of representations made during the plea hearing, stating:

4

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge*, 431 U.S. 63, 73-74 (1977).

## II. BACKGROUND

### A. Facts Regarding Petitioner's Offense Conduct

The following facts are obtained from the factual basis of Petitioner's Plea Agreement to which the Petitioner stipulated when he signed the Plea Agreement on November 20, 2012 [Doc. 19, Plea Agreement at ¶ 4 and signature page at p. 16]. On March 27, 2012, an informant, acting under the direction of law enforcement officers, bought 19.63 grams of crack cocaine from Petitioner [*Id.* at ¶ 4(a)]. During the transaction, which was audio- and video-recorded, Petitioner bragged that he cooked crack cocaine every day at his grandmother's house [*Id.*].

On March 29, 2012, an informant bought 27.90 grams of crack cocaine from Petitioner [*Id.* at ¶ 4(b)]. Again, the transaction was recorded; although the camera was pointed at the ground and thus did not show Petitioner's face, the audio made clear that Petitioner was the seller [*Id.*]. During the transaction, Petitioner told the informant that he was waiting for his source, known as "Blood," to call him back [*Id.*]. Once "Blood" called, Petitioner obtained two ounces of crack cocaine and sold one to the informant, while keeping the other for himself. [*Id.*]. As part of his Plea Agreement, Petitioner specifically admitted "that he conspired with 'Blood' and others to manufacture and/or distribute 28 grams or more . . . of cocaine base (crack)." [*Id.* at ¶ 4(c)].

5

Subsequently, on June 26, 2012, Petitioner was indicted in a three-count indictment on drug charges related to conspiracy and the manufacturing and distribution of crack cocaine [Doc. 3]. On December 11, 2012, Petitioner pleaded guilty, pursuant to the written Plea Agreement, to Count One for conspiracy to manufacture and distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846 [Doc. 19, Plea Agreement at 1]. Pursuant to the Plea Agreement, Petitioner expressly agreed that the facts to which he stipulated in the Plea Agreement satisfy the elements of conspiracy to manufacture and distribute 28 grams or more of cocaine base (crack) in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B).[2]

As part of the Plea Agreement, Petitioner agreed to waive any direct appeal except the right to appeal a sentence imposed above the Sentencing Guideline range or any applicable mandatory minimum [*Id.* at ¶ 13(a)]. He also agreed to waive the right to file any pleadings under 28 U.S.C. § 2255 except for claims of ineffective assistance of counsel or prosecutorial misconduct [*Id.* at ¶ 13(b)]. Further, the Plea Agreement specifically advised that Petitioner faced a term of imprisonment of not less than five years up to a maximum of forty years [*Id.* at ¶ 1(b)]. In exchange for his guilty plea to Count One, the government agreed to move for the dismissal of Counts Two and Three [*Id.* at ¶ 2]. The government also agreed to a three level reduction of the Sentencing Guidelines for acceptance of responsibility [*Id.* at ¶ 7]. The Plea

---

[2] Those elements, which are expressly set forth in the Plea Agreement, are:

   a) Two or more persons conspired or agreed to commit the crime of manufacturing or distributing cocaine base ("crack"), Schedule II controlled substance;
   b) The defendant knowingly joined and participated in the conspiracy;
   c) The conspiracy involved 28 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack").

21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B).

Agreement advised that Petitioner, by agreeing to it, waived, *inter alia*, his right to present evidence to a jury, to testify on his own behalf, and to confront and cross-examine witnesses against him [*Id.* at ¶ 5].

The Magistrate Judge held a rearraignment on December 11, 2012, in which Petitioner pleaded guilty to Count One of the indictment. Petitioner was placed under oath [Doc. 44, Rearraignment Tr. at 5]. During this rearraignment, Petitioner testified he attended school through eleventh grade, can read and write, and has never been treated for a mental illness [*Id.* at 5-6]. He was asked if he had had enough time to talk with his lawyer about his case and the benefits of entering a plea, and he stated he had [*Id.* at 6]. He was advised he faced five to forty years' imprisonment on Count One and that, if he pleaded guilty to Count One, the government would move to dismiss the other two counts of the indictment [*Id.* at 4-5]. He was also advised that by pleading guilty, he was waiving the right to a jury trial in which the government would have to prove beyond a reasonable doubt all the elements of the charge against him, and that he was waiving the right to present evidence and to cross examine witnesses [*Id.* at 7-9]. Specifically, the Court told Petitioner, "[i]f you plead guilty here today, no longer will the government have to prove your guilt beyond a reasonable doubt, you'll be telling me that you're guilty…. there won't be a trial of any kind. Do you understand that?" [*Id.* at 9-10]. Petitioner responded under oath, "[y]es, sir" [*Id.* at 10]. The Court then discussed the Plea Agreement that was "signed on November 20th by Mr. Haggard…" [*Id.* at 11]. The Court asked Petitioner if it was the same Plea Agreement he had signed and Petitioner stated it was [*Id*. at 11]. The Court asked Petitioner, "[h]as anybody forced you or threatened you or made you enter this plea of guilty?" Petitioner responded, "[n]o, sir." [*Id.* at 10]. The Court also asked Petitioner if anyone from the government or "anybody else" made him promises of leniency or a lighter sentence not

7

included in the Plea Agreement. Petitioner said, "[n]o, sir" [*Id.* at 14]. The Court asked Petitioner if, in light of the possible sentence that he could receive, was he still willing to plead guilty, and Petitioner responded that he was [*Id.* at 16]. The government reviewed for Petitioner each element of the crime for which Petitioner was charged in Count One, and the Court asked Petitioner if he understood those were the elements the government would have to prove beyond a reasonable doubt if he did not plead guilty. Petitioner stated he understood [*Id.* at 15-16]. The Court also asked Petitioner if he had reviewed the factual basis in paragraph 4 of the Plea Agreement and whether he agreed to the facts as set forth in that paragraph. Petitioner answered in the affirmative to both questions [*Id.* at 20]. Finally, the Court asked Petitioner, "[a]re you offering to plead guilty because you are, in fact, guilty?" Petitioner stated, "[y]es, sir" [*Id.* at 20-21].

In calculating the applicable Sentencing Guidelines range, using the 2012 version of the Sentencing Guidelines and the drug amounts stipulated by Petitioner in his Plea Agreement, the probation officer found that Petitioner's base offense level was 26 [Presentence Report ("PSR") at ¶ 12]. After a three-level reduction for acceptance of responsibility, his total offense level was 23 [*Id.* at ¶¶ 19-21]. Given Petitioner's criminal history category of IV, the corresponding Sentencing Guidelines range was 70 to 87 months' imprisonment [*Id.* at ¶¶ 31, 59]. In calculating the amount of cocaine base attributable to Petitioner in the Presentence Report, the probation officer stated:

> On March 29, 2012, the ATF and the CPD utilized a CI to make a controlled purchase of cocaine base from the defendant. Lab results reveal the purchase was 27.90 grams of cocaine base. The purchase was recorded on audio and video. The video does not show the defendant's face as it is pointed at the ground, but the audio clearly demonstrates the defendant is the seller of the cocaine base. During this transaction, the defendant tells the CI he is waiting for "Blood" (the defendant's cocaine base source) to call him back and that he is going to buy one as well. After receiving the call, the CI took the defendant to buy the two ounces

8

> of crack. The defendant kept one ounce for himself and sold one to the CI. The defendant's ounce of crack was not confiscated nor was it lab tested. However, it could be assumed that it weighed as much as the crack given to the CI, 27.90 grams. A standard ounce is 28.35 grams. That would bring the total amount of cocaine base in this case to 75.43 grams. The actual amounted tested weighed 47.53 grams. *Both 47.53 grams and 75.43 grams of cocaine base results in a base offense level of 26.*

[Presentence Report at ¶ 7, emphasis added]. The government does not dispute Petitioner's contention that the District Court found Petitioner responsible for 75.43 grams of cocaine base at the sentencing hearing.

The Court ultimately sentenced Petitioner to 80 months' imprisonment [Doc. 24, Judgment]. Petitioner did not appeal, but instead filed the instant § 2255 motion on July 25, 2013 [Doc. 25, § 2255 Motion].

### III. Discussion

#### A. Ineffective Assistance by Failing to Contest Whether A Conspiracy Existed

Petitioner's primary argument in his 2255 Motion is that his counsel was ineffective for advising him to plead guilty to a conspiracy charge because, had counsel investigated the case or filed a motion to suppress evidence, he would have seen that there was insufficient evidence to convict him of a conspiracy charge. Petitioner argues correctly that an informant or government agent cannot be deemed a co-conspirator; however, he then reasons incorrectly that his conspiracy conviction is invalid because, in his view, the only evidence against him was the video recordings of the informant purchasing crack cocaine from him [Doc. 25, § 2255 Motion at 5; Doc. 25-1, Memorandum at 2]. Petitioner's claim is factually incorrect because the recordings proved more than his sales to an informant. Rather, in one recording, Petitioner was heard saying that "Blood" was his supplier, and, as part of his written Plea Agreement, Petitioner specifically admitted "that he *conspired with 'Blood' and others* to manufacture and/or distribute

9

. . . cocaine base (crack)" [Doc. 19, Plea Agreement at ¶¶ 4(b) and (c) (emphasis added)]. The stipulated facts in the Plea Agreement were sufficient to establish the existence of a conspiracy and Petitioner's involvement in that conspiracy.

In addition, Petitioner offers no grounds upon which a motion to suppress should have been filed. Furthermore, Petitioner stated under oath at the rearraignment that he had reviewed the factual basis for his guilty plea and that he had no objections to those facts. He was informed of the elements of conspiracy, he stated he understood them, and he still pleaded guilty. The consequences of Petitioner's pleading guilty, including his potential sentence and the constitutional rights he was waiving, were discussed at length with Petitioner, and Petitioner stated under oath that he understood the sentence he faced, the rights he was waiving, and he still wished to plead guilty. Further, Petitioner told the Court that he had reviewed the Plea Agreement with counsel and that no one had made him promises of leniency outside those expressed in the Plea Agreement. Finally, Petitioner stated under oath at the rearraignment that the factual basis for his guilty plea was true and he was, in fact, guilty. The undersigned concludes that Petitioner voluntarily, intelligently, and knowingly entered into the Plea Agreement. Petitioner has not identified any legitimate basis upon which counsel could have disputed the existence of a conspiracy or Petitioner's involvement therein, particularly given Petitioner's stipulations during the plea colloquy. A defendant's sworn statements during a plea colloquy are binding. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). Because "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), a petitioner is bound by his statements where the court has followed the required procedure under Rule 11. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986); *see also, United States v. Rennick*, 219 F. App'x 486, 488-89 (6th Cir. 2007). The Court concludes

counsel's decision not to contest the conspiracy charge was not deficient under any reasonable standard.

B. <u>Ineffective Assistance During Plea Negotiations</u>

Petitioner next alleges that counsel induced him to plead guilty by promising that petitioner's sentence would be 46 to 57 months' imprisonment [Doc. 25-1, Memorandum at 4]. But the written Plea Agreement, which petitioner personally signed, explicitly stated that petitioner faced a term of imprisonment "of not less than five years up to a maximum of forty years," that the Court could impose any term of imprisonment up to that maximum, and that "any estimates or predictions made . . . by defense counsel or any other person regarding any potential sentence . . . are not binding" [Doc. 19, Plea Agreement at ¶¶ 1(b), 6]. Moreover, as required by Fed. R. Crim. P. 11, the magistrate judge who conducted the plea colloquy advised petitioner of the statutorily-authorized sentencing exposure, and Petitioner indicated under oath that he understood the sentence he faced. He further testified that he had no promises of leniency from anyone outside the Plea Agreement. As noted above, a Petitioner is bound by his sworn statements during a plea colloquy.

Petitioner next claims that counsel's inaction during plea negotiations deprived him of the benefit of the Fair Sentencing Act of 2010 [Doc. 25-1, Memorandum at 6]. Petitioner is mistaken. He was charged with violating a statute that had already been amended by the Fair Sentencing Act of 2010. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (August 3, 2010) (revising the penalties under 21 U.S.C. § 841(b)(1)(B)(iii) to apply to 28 grams or more of cocaine base instead or 5 grams or more of cocaine base.) The reduced statutory penalties set forth in the Fair Sentencing Act of 2010 were incorporated into the Sentencing Guidelines before Petitioner was sentenced. *See* U.S.S.G. § 2D1.1(c)(7) (applying base offense

11

level of 26 to 28 grams but less than 112 grams of cocaine base.)  Petitioner has already received all the benefits of the Fair Sentencing Act to which he was entitled.

Finally, the record contradicts Petitioner's assertion that he received no benefit from pleading guilty [*Id*.].  Petitioner received two important benefits from pleading guilty.  First, he received a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, without which his Sentencing Guidelines range would necessarily have been greater.  Moreover, as part of the Plea Agreement, the government agreed to dismiss the remaining two counts against Petitioner -- that, in itself, was an appreciable benefit to Petitioner.  *See, e.g., United States v. Conway*, 513 F.3d 640, 644 (6th Cir. 2008) (noting that the dismissal of certain counts constituted a benefit even where the underlying offense conduct for those counts was then used to increase his sentence; describing it as "perhaps not the benefit he hoped for when he entered into the [plea] agreement, but a benefit nonetheless.").

### C. Ineffective Assistance by Failing to Challenge the Drug Quantity

Petitioner claims that counsel should have objected to the drug quantity of 75.43 grams attributed to him at sentencing because it was greater than the lab-tested quantities of 47.3 grams obtained by the informant [Doc. 25-1, Memorandum at 2, 7].  The probation officer had computed the higher quantity by including the additional ounce of crack cocaine that Petitioner obtained from "Blood" during one of the recorded transactions.  Significantly, however, Petitioner's base offense level was unaffected by the inclusion of the additional ounce of crack cocaine; indeed, the probation officer specifically noted that either amount – 47.53 grams or 75.43 grams of crack cocaine – would have yielded the same base offense level of 26 [PSR at ¶ 7].  Pursuant to U.S.S.G. 2D1.1(c)(7) (2012), an offense involving 28 grams but less than 112 grams of cocaine base yields a base offense level of 26.  Objecting to the drug quantity would

12

not have altered Petitioner's Sentencing Guidelines range. Consequently, Petitioner cannot show that he was prejudiced by counsel's inaction, and this Court need not inquire whether counsel's performance was deficient.

Petitioner also claims that the determination of his drug quantity by a judge, rather than a jury, violated *Alleyne v. United States*, 133 S. Ct. 2151 (2013). But Petitioner's reliance upon *Alleyne* is misplaced, and there are two independent reasons why it affords no basis for relief.

First, *Alleyne* does not apply retroactively to cases like Petitioner's that are already final because *Alleyne* merely adopted a new rule of criminal procedure. *In re Mazzio*, 756 F.3d 487, 489-90 (6th Cir. 2014) (holding "any new rule announced in *Alleyne* has not been made retroactive to cases on collateral review by the Supreme Court.").

Second, *Alleyne* only requires jury determinations as to facts (other than the fact of a prior conviction) which increase the mandatory minimum penalties for an offense. *United States v. Johnson*, 732 F.3d 577 (6th Cir. 2013). When pleading guilty, Petitioner stipulated to a drug quantity of 28 grams or more of cocaine base which triggered the statutory penalty of "not less than 5 years and not more than 40 years." 21 U.S.C. § 841(b)(1)(B)(iii). The Court's finding that Petitioner had trafficked more cocaine base than 28 grams did not affect the mandatory minimum. Thus, *Alleyne* offers Petitioner no relief, and his counsel was not ineffective for not raising the issue.

D. Jurisdictional Authority of Magistrate Judge To Take Guilty Plea

In his reply brief, Petitioner argues for the first time that the magistrate judge who took his guilty plea lacked jurisdiction to do so. However, Petitioner consented to have the magistrate judge take his guilty plea [Doc. 18, Consent, Dec. 12, 2012; Doc. 44 Rearraignment Tr. at 4-5], and it is well accepted practice within the Sixth Circuit that a magistrate judge may take a

defendant's guilty plea with that defendant's consent. *Coe v. Snyder-Norris,* --- F.Supp.3d ---, 2016 WL 3197130 * 3 (E.D. KY June 6, 2016) (citing *United States v. Cukaj*, 25 F. App'x 290, 291 (6th Cir. 2001)); *see also Thomas v. United States*, 2015 WL 8180468 (N.D. Ohio Dec. 7, 2015) (unpublished) ("Magistrate Judges may accept guilty pleas in felony cases with the consent of the defendant.") (citing *United States v. Ciapponi*, 77 F.3d 1247, 1251 (10th Cir. 1996)).

## IV. CONCLUSION

The Court has reviewed this 2255 Motion carefully and finds no merit in Petitioner's claims. For the reasons stated herein, the Court finds no evidentiary hearing for this motion brought pursuant to 28 U.S.C. § 2255 is necessary. The Court further concludes, on the basis of the record before it, that Petitioner is not entitled to relief. The 2255 Motion [Doc. 25] is therefore DENIED.

AN APPROPRIATE JUDGMENT ORDER WILL ENTER.

    */s/ Harry S. Mattice, Jr.*
    HARRY S. MATTICE, JR.
    UNITED STATES DISTRICT JUDGE